# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC.,

    *Plaintiff*,

  v.

U.S. DEPARTMENT
OF THE TREASURY,

    *Defendant*.

No. 21-cv-2797 (DLF)

## <u>MEMORANDUM OPINION</u>

  Project on Government Oversight, Inc. (POGO) brings this action against the United States Department of the Treasury under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Before the Court is Treasury's Motion for Summary Judgment, Dkt. 12. For the reasons stated below, the Court will grant the motion.

## I.  BACKGROUND

  In an effort to uncover documents related to "possible unlawful interference in the presidential audit process conducted by the IRS," Compl. ¶ 14, Dkt. 1, POGO submitted a FOIA request on February 28, 2020 seeking records from the email accounts of seven senior Treasury officials. Dodson Decl. ¶ 3, Dkt. 12-4. Specifically, POGO requested "emails and email attachments since July 1, 2019 mentioning" "Ways and Means," "Grassley," "Wyden," "finance.senate.gov," or "Trump"; together with the terms "evidence of possible misconduct," "inappropriate efforts to influence," "IRM 4.2.1.11," "Processing Returns and Accounts of the President and Vice President,"  "IRM 4.8.4.2.5," "Audit of President and Vice President," "IRM 11.3.30," "Disclosure to the President," or "whistleblower." *Id.*; *see also* FOIA Request at 1, Dkt.

12-5.  POGO sought "records which will inform readers about how Treasury leadership is responding to allegations by a whistleblower that involve the president."  FOIA Request at 2. POGO asked that personal and campaign email accounts, as well as official ones, be included in the search.  *Id.*

Treasury conducted a search through NUIX Discover, the Department's e-discovery software, using all of the proposed terms and a date range from July 1, 2019 to January 20, 2021. Dodson Decl. ¶¶ 5–6.  Treasury did not, however, search any personal email accounts because it "[did] not have access" to those accounts and had a policy that "require[d] employees who conduct official business on personal email accounts to copy or forward such messages to their official Treasury email account within 20 days."  *Id.* ¶ 8.  The search identified 1741 potentially responsive documents, which a Treasury official "personally reviewed" and narrowed to three responsive documents.  *Id.* ¶ 7 n.3.  All three documents were produced to the plaintiff.  *Id.*

POGO filed its complaint on October 21, 2021.  Dkt. 1.  Treasury now moves for summary judgment.  Dkt. 12.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (cleaned up).  All facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing

2

that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009). "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (quoting *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of [FOIA] have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). Agency affidavits are entitled to a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (alteration in original and citation omitted).

It is well established that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). If, however, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available." *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988).

III.    **ANALYSIS**

At the summary judgment stage in a FOIA suit, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis omitted).   In general, the adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.*  "The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are relatively detailed, nonconclusory and submitted in good faith." *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013) (cleaned up).  A search is adequate if it uses "methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (citation omitted).  And a "reasonably detailed affidavit" sets forth "the search terms and the type of search performed" and states that "all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Here, Treasury submitted two declarations from Richard Dodson, *see* Dodson Decl.; Second Dodson Decl., Dkt. 15-2, who coordinated the search and personally reviewed all potentially responsive documents.  The declarations describe the search process, including the terms and methods used, as well as who extracted the data, Treasury's Enterprise Content Management team within the Office of the Chief Information Officer.  Dodson Decl. ¶¶ 2–3, 5–7. Dodson also attested that he personally reviewed all the potentially responsive documents to determine if they were responsive to the request.  Dodson Decl. ¶ 7 n.3.  These declarations adequately describe a search reasonably calculated to locate the requested records.  Consistent with Circuit precedent, the declarations "set[] forth the search terms and the type of search performed,

4

and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68.  Because the Court finds that Dodson's declarations illustrate a good faith and reasonable search, the burden shifts to POGO to produce countervailing evidence that shows a genuine dispute of material fact as to the adequacy of the search.  *See Hunton & Williams*, 248 F. Supp. 3d. at 236.

The Court is unpersuaded by POGO's multiple theories as to why the search was inadequate.  First, the Dodson Declaration adequately describes how Treasury reduced the 1741 potentially responsive documents down to three, Dodson Decl. ¶ 7, n.3, and the Court disagrees with POGO's assertion to the contrary, *see* Pl.'s Opp'n at 9, Dkt. 13.  The Dodson Declaration explains that Dodson personally reviewed every document for responsiveness to POGO's request, Dodson Decl. ¶ 7 n.3, and describes the terms and custodians involved in the initial search, *id.* ¶ 3. It is not true that there was no "explanation of the criteria [Dodson] used to cull out responsive documents," Pl.'s Opp'n at 9; the criteria were those in the FOIA request itself, which Dodson attests he manually applied to each potentially responsive document generated by POGO's search terms.  Manual review for responsiveness, although potentially time-consuming for the agency, was a reliable method of completing the search.  *See Hall & Assocs. v. EPA*, 14 F. Supp. 3d 1, 7– 8 (D.D.C. 2014) (explaining that a "human-centered approach is entirely proper" where "those conducting the search [are] familiar with the request" (citation omitted)).  POGO has made no argument to rebut the "presumption of good faith" afforded to Dodson's account of a manual search, and the Court deems that search adequate.  *SafeCard Servs.*, 926 F.2d at 1200.

Second, Treasury was not obligated to search personal email accounts.  Courts presume that agency records are unlikely to be found solely on personal email accounts since officials are prohibited from using them for official business without forwarding or copying emails to their

official account.  *Judicial Watch, Inc. v. DOJ*, 319 F. Supp. 3d 431, 437–38 (D.D.C. 2018) (collecting cases); *see also Bader Family Found. v. U.S. Dep't of Educ.*, No. 21-cv-1741, 2022 WL 4355259, at *5 (D.D.C. Sept. 20, 2022).  POGO's argument that Treasury has failed to offer evidence that its email policy was followed, *see* Pl.'s Opp'n at 9–10; Pl.'s Surreply at 1–2, Dkt. 16, improperly shifts the burden to Treasury.  The presumption is that officials followed Treasury's email policy requiring any work-related emails to be forwarded to official email accounts.  *See Judicial Watch,* 319 F. Supp. 3d at 437–38.  POGO has failed to rebut that presumption "with something more than pure speculation." *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (citation omitted).

Third, neither the number of produced documents nor their contents brings the adequacy of the search into question.  Adequacy is not determined by the "fruits of the search."  *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (citation omitted).  Rather, for a search to be adequate, it must merely be reasonably calculated to produce the materials requested if they exist.  *Oglesby*, 920 F.2d at 68.  POGO's argument that Treasury produced too few documents because it "added an unwarranted gloss," Pl.'s Opp'n at 11, is similarly unpersuasive.  Treasury did indeed search, in its final manual review of potentially responsive documents, for records "which informed readers about how Treasury leadership is responding to allegations by a whistleblower that involve the President."  Dodson Letter at 1, Dkt. 13-1.  But this criterion was not "unwarranted"; to the contrary, that language was taken nearly verbatim from the "subject" of POGO's FOIA request:

> POGO is requesting records which will inform readers about how Treasury leadership is responding to allegations by a whistleblower that involve the president. We believe these records will allow us to better inform the public about the agency's efforts regarding the whistleblower, namely whether they are seeking to protect the unnamed whistleblower or identify them and whether they are cooperating with Congress in their investigation of the whistleblower's claims. These records are not currently posted online.

6

FOIA Request at 2.  In its preliminary database search, Treasury used the precise search terms that POGO requested, even though it was not necessarily obligated to do so.  *See Bigwood v. DOD*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) ("In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request.").  When those search terms produced a large volume of results, Treasury properly narrowed the production to records related to the subject matter POGO expressly described in its request.

Finally, Treasury's invocation of *Glomar* and Exemption 3 in its answer and status reports before it had searched for documents does not call into question whether it properly responded to POGO's FOIA request.  Treasury confirmed that its invocation of *Glomar* and Exemption 3 in its answer and in status reports were to preserve potential defenses not currently before the Court.  *See* Def.'s Reply at 6–7, Dkt. 14.  Because POGO challenges only the adequacy of the search, the Court need not consider these unrelated potential issues.

## CONCLUSION

For the foregoing reasons, the Court grants Treasury's Motion for Summary Judgment.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH

December 15, 2022                                                            United States District Judge